IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK02-80785 |
| ) | A04-8074 |
| PRIME REALTY, INC., ) | A04-8075 |
| ) | |
| Debtor(s). ) | CH. 11 |
| JAMES KILLIPS, Chapter 11 Trustee of ) | |
| Prime Realty, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ROBERT C. SCHROPP, an individual, and ) | |
| RCS & SONS, INC., a Nebraska corporation, ) | |
| ) | |
| Defendants. ) | |
| JAMES KILLIPS, Chapter 11 Trustee of ) | |
| Prime Realty, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| LEO E. DAHLKE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Trial was held in Omaha, Nebraska, on April 25, 2007, on the Complaint for Avoidance and Recovery of Preferential Transfers and Fraudulent Conveyances filed by James E. Killips, Chapter 11 Trustee. Robert F. Craig and Jenna B. Taub appeared for James Killips, plaintiff, and Donald Dworak appeared for Robert C. Schropp and Leo E. Dahlke, defendants. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(F) and (H).

## BACKGROUND and DECISION

The trustee of Prime Realty, Inc., has filed these two adversary proceedings to avoid transfers of money from the debtor to the defendants within one year of the debtor's bankruptcy petition. The trustee's theory is that such transfers were either avoidable preferences under 11 U.S.C. § 547 or fraudulent transfers under 11 U.S.C. § 548. The adversaries were tried together and this order will be filed in each adversary proceeding.

For the reasons discussed below, judgment will be entered in favor of each of the defendants and against the trustee. The transfers are not avoidable.

## UNCONTROVERTED FACTS

Prime Realty, Inc., a corporation; RCS & Sons, Inc., a corporation; and Leo Dahlke, an individual, formed numerous joint ventures/partnerships to purchase, improve and sell various parcels of real estate located in the Omaha, Nebraska, area. Robert Schropp, an individual, is the sole owner of RCS & Sons, Inc., and has been named as a defendant because the proceeds of certain checks transferred from the debtor to RCS & Sons, Inc., were directly deposited into the individually owned bank account of Robert Schropp, without first being deposited in the account of RCS & Sons, Inc.

From the summary of uncontroverted facts in the preliminary pretrial statement filed at Filing No. 13 in each case:

1. Prime Realty, Inc., filed its voluntary Chapter 11 case on March 15, 2002;

2. Plaintiff James Killips was appointed Trustee of Prime Realty, Inc., on August 15, 2003;

3. On or about July 1, 2001, debtor issued a check in the amount of $20,000 to RCS & Sons, Inc.;

4. On or about June 1, 2001, debtor issued a check in the amount of $20,000 to RCS & Sons, Inc.;

5. On or about April 30, 2001, debtor issued a check in the amount of $20,000 to RCS & Sons, Inc.;

6. On or about April 13, 2001, debtor issued a check in the amount of $1,682.45 to RCS & Sons, Inc.;

7. On or about April 13, 2001, debtor issued a check in the amount of $20,000 to RCS & Sons, Inc.;

8. On or about April 12, 2001, debtor issued a check in the amount of $232,000 to RCS & Sons, Inc.;

9. The transfers referenced above total $313,682.45;

10. On or about July 1, 2001, debtor issued a check in the amount of $15,000 to Leo Dahlke;

11. On or about June 1, 2001, debtor issued a check in the amount of $15,000 to Dahlke;

12. On or about May 1, 2001, debtor issued a check in the amount of $15,000 to Dahlke;

13. On or about April 13, 2001, debtor issued a check in the amount of

$15,000 to Dahlke;

14. On or about April 13, 2001, debtor issued a check in the amount of $1,682.45 to Dahlke;

15. On or about April 12, 2001, debtor issued a check in the amount of $232,000 to Dahlke;

16. The transfers referenced above totaled $293,682.45.

FINDINGS OF FACT and CONCLUSIONS OF LAW

To avoid a transfer as a preference under 11 U.S.C. § 547(b)[1], the trustee has the burden of proof on all of the elements of § 547(b). In these two cases, the individual defendants entered into an arrangement with the debtor whereby the debtor would purchase their interests in one or more of the partnerships. The transfers in question represent partial payments for those partnership interests. The debtor was to continue making monthly payments in the amount of $20,000 per month to Mr. Schropp and $15,000 per month to Mr. Dahlke until late March of 2002. Therefore, for purposes of the preference avoidance statute, the defendants were creditors who received an interest in property of the debtor on account of an antecedent debt made within one year of the petition date. In addition, Mr. Dahlke and RCS & Sons, Inc., would be considered insiders of the debtor as the term "insider" is defined at 11 U.S.C. § 101(31)(B).[2] Persons who meet the statutory

---

[1] 11 U.S.C. § 547(b), as it existed prior to the 2005 amendments to the Bankruptcy Code, states:
    Except as provided in subsection(c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
        (1) to or for the benefit of a creditor;
        (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
        (3) made while the debtor was insolvent;
        (4) made –
            (A) on or within 90 days before the date of the filing of the petition; or
            (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
        (5) that enables such creditor to receive more than such creditor would receive if –
            (A) the case were a case under chapter 7 of this title;
            (B) the transfer had not been made; and
            (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

[2] 11 U.S.C. § 101(31)(B) provides:
    "insider" includes –
        (B) if the debtor is a corporation –

(continued...)

definition of "insider" are considered insiders per se. Because the definition is not exclusive, anyone in a "sufficiently close relationship with the debtor that his or her conduct should be subject to closer scrutiny than those dealing at arms length with the debtor" may be found to be an insider. Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.), 346 B.R. 798, 804 (B.A.P. 8th Cir. 2006); Rupp v. United Sec. Bank (In re Kunz), ___ F.3d ___, 2007 WL 1600429 at *5 (10th Cir. June 5, 2007). Both Mr. Dahlke and RCS & Sons, Inc., were partners of the debtor in the various real estate partnerships. Mr. Schropp has admitted that although RCS & Sons, Inc., is a corporation, he owns it and he operates it and he controls it, and for some purposes, including the receipt of some of the transfers in question, he believed that the money payable to the corporation was actually his and he deposited it into his own personal account. He therefore stands in the shoes of RCS & Sons, Inc., and is an insider.

The two additional elements that the trustee must prove are, first, that the transfers were made while the debtor was insolvent, and second, that the transfers enabled the defendants to receive more than they would have received if the case had been filed under Chapter 7, the transfer had not been made and the defendants would simply have shared in the liquidation of the corporate assets pursuant to the distribution rules of the Bankruptcy Code.

The trustee bears the burden of putting on evidence to establish that the transfers enabled the defendants to recover more than they would have received in a Chapter 7 liquidation. Dowden v. First Sec. Bank (In re Mid-South Auto Brokers, Inc.), 290 B.R. 658, 663-64 (Bankr. E.D. Ark. 2003).The trustee did not present a liquidation analysis of the debtor at or near the date the various checks were drawn and delivered to the defendants. Instead, the trustee presented Filing No. 153, a combined exhibit including notices of insufficient funds in the Prime Realty, Inc., bank account and notices of past-due loans. In addition, what the trustee has identified as the "Prime Realty Balance Sheet, 4/1/01" (Fil. #183) was offered by the trustee. Both Filing No. 153 and Filing No. 183 were objected to by counsel for the defendant on foundation grounds, lack of authentication, and hearsay. The exhibits were admitted over the objections. There was no testimony concerning the accuracy of the "balance sheet," whether the assets listed were valued at cost, market, or any other valuation method. Taking the document at face value, it shows total assets of $29,109,461.49 and liabilities of $28,943,473.47, leaving a difference between stated assets and stated liabilities of $165,988.02. If that amount is the liquidation value, the defendants received more as a result of the transfers than they would have received in a Chapter 7 liquidation.

In addition to the above, the trustee must prove that the debtor was insolvent at the time

---

[2](...continued)
        (i) director of the debtor;
        (ii) officer of the debtor;
        (iii) person in control of the debtor;
        (iv) partnership in which the debtor is a general partner;
        (v) general partner of the debtor; or
        (vi) relative of a general partner, director, officer, or person in control of the debtor.

of the transfers.[3] The Bankruptcy Code at 11 U.S.C. § 101(32)(A) provides, in relevant part, "'insolvent' means – (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . . "

The trustee bears the burden of demonstrating insolvency under the statutory standard of "fair valuation." Pummill v. McGivern (In re Amer. Eagle Coatings, Inc.), 353 B.R. 656, 665-66 (Bankr. W.D. Mo. 2006) (holding that evidence was insufficient to establish insolvency on summary judgment motion where financial statements did not indicate what standard of valuation was used, the financial statements did not correlate alleged insolvency with any of the transfers, and other evidence indicated solvency).The trustee presented no expert witness testimony concerning the "fair valuation" of the debtor's property on any date. The trustee relied once again on Filing No. 153 and Filing No. 183. Neither of those exhibits prove that the debtor was insolvent on the date any of the checks were drawn or delivered. Filing No. 153 has nothing to do with valuation of the debtor's property. Filing No. 183, although purportedly a balance sheet of the debtor as of April 1, 2001, does not inform anyone of the fair valuation of the property of the debtor. If taken at face value, it shows that the debtor was solvent on April 1, 2001. The trustee testified that, although most of the properties listed on Filing No. 183 were foreclosed upon or sold prior to his administration or following his administration, none of the properties brought sufficient prices to satisfy the liens against them. That statement is undoubtedly true. However, there is simply no evidence of the value of any of the properties in April, May, June or July of 2001. Therefore, no determination can be made concerning the solvency or insolvency of the debtor at those time periods. The burden is on the trustee to prove each of the elements of 11 U.S.C. § 547(b) and the trustee has failed to do so.

The second claim for relief concerns the trustee's attempt to avoid the transfers as fraudulent conveyances under 11 U.S.C. § 548. That statutory provision permits the trustee to avoid a transfer of an interest of the debtor incurred within one year before the date of the filing of the petition if made with an actual intent to hinder, delay or defraud a creditor or if the debtor received less than reasonably equivalent value in exchange and was insolvent when the transfer was made or became insolvent as a result of the transfer or was engaged in a business for which any property remaining with the debtor was an unreasonably small capital.[4]

There is no evidence that the transfer was made with actual intent to hinder, delay or defraud anybody.

Under § 548(a)(1)(B)(i), the trustee must demonstrate, by a preponderance of the evidence, that payments a debtor made were not in exchange for reasonably equivalent value. Meeks v. Don Howard Charitable Remainder Trust (In re S. Health Care of Ark., Inc.), 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004). "This requires analysis of whether: (1) value was given; (2) it was given in exchange for the transfers; and (3) what was transferred was reasonably equivalent to what was received." Id. (citing Pummill v. Greensfelder, Hemker & Gale ( In re Richards & Conover Steel, Co.), 267 B.R. 602, 612 (8th Cir. B.A.P. 2001). See also Rosen Auto Leasing, 346 B.R. at 805. Although the

---

[3]Because the defendants are insiders and subject to an extended "look-back" period, the presumption of insolvency in § 547(f) does not apply.

[4]11 U.S.C. § 548(a)(1)(A), (B)(i), and (B)(ii)(I) & (II)

transaction was intended to allow the debtor to purchase their interests in one or more partnerships, the transaction was not completed and neither Mr. Dahlke nor Mr. Schropp transferred any interest in the partnerships to the debtor. It is, therefore, clear that the debtor did receive less than a reasonably equivalent value in exchange for delivering the checks.

As with the preference avoidance action, the trustee has failed to present sufficient evidence to show the debtor was either insolvent at the time the checks were delivered or became insolvent as a result of the transfer of funds. The same evidence was presented to support the trustee's position on the fraudulent transfer insolvency prong as was presented to support the trustee's position in the preference action. Even accepting Filing No. 153 and Filing No. 183 at face value, there is no evidence of insolvency.

Finally, it is the trustee's burden to show that the transfer of funds left the debtor with unreasonably small capital. This requires a court to "examine the ability of the debtor to generate enough cash from operations and sales of assets to pay its debts and remain financially stable" after a transfer. Dahar v. Jackson (In re Jackson), 459 F.3d 117, 123-24 (1st Cir. 2006) (quoting Pioneer Home Builders, Inc. v. Int'l Bank of Commerce (In re Pioneer Home Builders, Inc.), 147 B.R. 889, 894 (Bankr. W.D. Tex. 1992) and citing Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.), 100 B.R. 127, 137 (Bankr. D. Mass. 1989) (holding that under the "unreasonably small capital" provision in 11 U.S.C. § 548, courts must assess "the ability of the debtor to generate enough cash from operations or asset sales to pay its debts and still sustain itself" after a transfer)).

The undisputed testimony of Mr. Schropp and Mr. Dahlke is that in March and April of 2001, Mr. McCart, the president of the debtor, proposed a convoluted transaction by which Mr. Schropp and Mr. Dahlke would use their good credit and personal guarantees to permit the debtor to borrow approximately a million dollars. From those funds, the debtor was to continue its operation, pay to Mr. Schropp and Mr. Dahlke the monies represented by the transfers, continue to pay Mr. Schropp and Mr. Dahlke their installment payments on a monthly basis, and pay off the debt which had been guaranteed by Mr. Dahlke and Mr. Schropp. At the end of one year from the date of the agreement, if all payments were current, the partnership interests would have been transferred to the debtor. If the transaction had worked according to plan, the debtor would have had available to it several hundred thousand dollars over and above the amount paid out to the defendants. Although those funds may not have been defined as "capital" in the strict sense, the funds nonetheless would have been available to the debtor to continue operations.

One of the many problems with the transactions was that it appears Mr. McCart, on behalf of the debtor, did not put the excess funds into the debtor's accounts. None of the exhibits which relate to the bank accounts of the debtor show that the funds were deposited with the debtor.

There is no real evidence of the capital structure of the debtor either before or after the transfers in question. The only document in evidence that purports to show the financial situation of the debtor is Filing No. 183. As with the insolvency analysis, it is impossible to determine from Filing No. 183 the actual capital position of the debtor. There is no evidence of value of the business as an ongoing entity, or the fair value of the assets even on a liquidation basis, and there is no analysis of the debt listed on Filing No. 183. The trustee even testified that he did not believe there was any supporting documentation for a number of the entries on Filing No. 183.

It is the burden of the trustee to prove each of the elements of 11 U.S.C. § 548(a). The

trustee has failed to provide convincing proof of insolvency or of unreasonably small capital. Therefore, the trustee has not met his burden and separate judgment shall be entered in favor of the defendants on all issues.

DATED this 14th day of June, 2007.

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
\*Robert F. Craig
\*Jenna B. Taub
Donald Dworak
U.S. Trustee

Movant (\*) is responsible for giving notice to other parties if required by rule or statute.